MCDANIEL, for use, *vs.* GRAY & COMPANY.

A bond for titles contained the following clause: "Now, if he (McDaniel, agent, who was the vendee) shall well and truly pay said notes at the times above specified, then the said C. W. Gray & Co. (the vendors) are bound to execute to said McDaniel, agent as aforesaid, or assigns, a good and sufficient title to the land aforesaid, but on failure of the said McDaniel, agent as aforesaid, to pay the aforesaid sums of money, or either of them, at the times therein

specified, then the above obligation to be void and of no effect." The purchaser paid one hundred dollars on the land, but failed to make any further payment. The vendors thereupon re-entered, the land being still vacant, and resold to another purchaser:

*Held*, that upon the failure of the purchaser to pay, the vendors had the right to reduce the purchase money notes to judgment, file a deed and sell the land; or, they could bring ejectment; or, if the land was still vacant, they could re-enter and take possession of it.

(*a.*) But when they pursued the last named course, they thereby elected to rescind the trade, and an implied obligation on their part arose to restore to the purchaser the amount of purchase money paid by him, less such an amount as would prevent actual loss to them by reason of his non-performance of the contract; and he could bring his action therefor.

(*b.*) After such rescission by the vendors, it was not necessary for the vendee to show that he was ready and willing to comply with the contract by paying the purchase money before bringing suit for what he had in fact paid.

December 5, 1882.

Vendor and Purchaser. Contracts. Action. Title. Before Judge FAIN. Catoosa Superior Court. February Term, 1882.

Reported in the decision.

A. T. HACKETT; W. K. MOORE; T. R. JONES, for plaintiff in error.

R. J. McCAMY, for defendants.

CRAWFORD, Justice.

Wm. P. McDaniel, agent, etc., bought of C. W. Gray & Co., a vacant lot in the city of Atlanta, for which he paid cash $100.00, and gave his notes payable in four installments, extending over a space of some six months, for the balance, and took a bond for titles.

In that bond was the following clause: "Now if he shall well and truly pay said notes at the times above specified, then the said C. W. Gray & Co. are bound to

execute to said McDaniel, agent as aforesaid, or assigns, a good and sufficient title to the land aforesaid, but on failure of the said McDaniel, agent as aforesaid, to pay the aforesaid sums of money, or either of them, at the times therein specified, then the above obligation to be void and of no effect."

The notes were never paid. A short time before the last fell due Gray & Co. re-entered upon the land, the same being still vacant, re-sold it to another purchaser, and upon the payment of the purchase money made him a title.

This suit was brought by McDaniel, the first purchaser, to recover of Gray & Co. the $100.00 paid to them on this land.

The court below on the trial ruled, that to entitle him to recover, he must first show compliance, or an offer to comply with his contract. That if he failed to pay the notes, or any part of them when they fell due, Gray & Co. could take possession of the land and sell it, and before he could recover back the money paid, he must show that he was ready and willing to comply by paying the money for said land prior to the bringing of this suit, and this he must do, notwithstanding the fact that Gray & Co. may have sold the land, and put it out of their power to comply on their part.

On this ruling of the court error is assigned.

Under this contract of sale, we hold that upon the failure of the purchaser to pay the notes as they fell due, the vendors had the right to reduce them to judgment, file a deed and sell the land, as provided by law in such cases ; or they had the right to their action of ejectment ; or if the land were still vacant and unoccupied, to re-enter and take possession.

They adopted the latter course. This act on their part, as shown by the proof, was a rescission of the contract, and they have since held and maintained their right to the land, because of the failure of the purchaser to

comply with his part of the contract.    Thus repudiating
the contract, and repossessing themselves of the land,
with the intent to hold it as their own, and thereby to
restore themselves to the condition in which they were
before the contract was made, there was an implied obli-
gation on their part to restore the other party to the
condition in which he was before the contract, as far as
the same could be done with equal and exact justice to
both parties.

   Gray & Co. were not bound to rescind, and thus give
up whatsoever of advantage they might have had in the
sale of the land.   They could have brought it to sale, and
if bought back by them, or bought by another, at half the
amount of their debt, the *fi. fa.* would still have been valid
against McDaniel for the unpaid balance.    Had they
resorted to ejectment to recover the land, they would
have stood before the court with their naked legal title,
and a judgment therefor could not have been prevented
under their contract of sale.    Pursuing, however, neither
of these remedies, the only one which remained open to
them, was to avail themselves of that which they acted
upon—to rescind because of the non-performance of the
opposite party of his part of the contract, as allowed by
section 2860 of the Code.    Having elected to do this, they
were in possession of both land and money; not by any
legal process, nor by contract, but by their individual act.
And it is to be noted also, that there is no provision in
this contract authorizing the vendors *to declare it forfeited*
for a failure to make punctual payments.    And the gen-
eral principle is admitted to be, that where the parties
themselves have not agreed and prescribed the right of
rescission, and the circumstances under which it is to be
exercised, restoration must be made.    8th Am. Rep., 688;
24th Am. Dec., 774.    Does it not follow, then, that these
parties should restore to the purchaser the amount of the
purchase money paid, less such an amount as would pre-
vent actual loss to them, by reason of the non-performance
of the contract on the part of the purchaser?

This appears to us to be the proper rule of law governing the case ; and if the amount actually paid had been $850 of the $900 promised, and the vendors had rescinded as they did, it would hardly be claimed that they should be allowed to retain the whole amount of the money and the land besides.

The amount involved, whether great or small, cannot change a legal principle. This view seems to be in harmony with the reasoning in the case of *Hudson vs. Duke*, 21 *Ga.* 403.

Judgment reversed.