ROBINSON *v.* BATZER.

1. ASSUMPSIT—VENDOR AND PURCHASER—LANDLORD AND TENANT—
BETTERMENTS—RIGHT OF RECOVERY.

    Where plaintiff entered upon defendant's land, as a pros-
pective purchaser, but a contract of purchase was never
consummated, and defendant later recovered possession in
summary proceedings, plaintiff was not entitled to recover
for betterments to the land, in an action of assumpsit,
such recovery being allowed only in cases of ejectment
when the owner brings the suit; nor was defendant en-
titled to setoff for use and occupation, he being neither
a landlord nor a vendor in a contract to sell.[1]

2. SAME—GOODS FURNISHED.

    In the absence of evidence that defendant appropriated ice
and manure left on the place by plaintiff, he was not
entitled to recover for the same.

3. SAME — VENDOR AND PURCHASER — CONTRACTS — UNCOMPLETED
CONTRACT—RIGHT TO RECOVER PURCHASE PRICE.

    In such action plaintiff was entitled to recover money paid
upon the purchase price, defendant having rescinded the
contract and ousted plaintiff from possession.

Error to Bay; Collins, J. Submitted January 18,
1917. (Docket No. 4.) Decided March 29, 1917.

Assumpsit by William M. Robinson against Gott-
lieb Batzer upon the common counts for money had
and received and for betterments to defendant's prop-
erty. Judgment for plaintiff. Defendant brings er-
ror. Reversed in part, with directions to circuit court.

From defendant's (appellant's) brief the following
statement of facts is taken:

"The defendant, Gottlieb Batzer, was the owner of

[1]On right to allowance for improvements made before acquir-
ing color of title, see note in 37 L. R. A. (N. S.) 918.

    On rights in respect to compensation for improvements on
land, made in good faith, under an oral contract or gift, see
note in 53 L. R. A. 337.

a 68-acre farm located on the town line in Portsmouth
township of Bay county, and lived on the same in
the fall of 1914.  The plaintiff, William M. Robinson,
a resident of Merritt township, had a talk with de-
fendant in the fall of 1914, relative to the purchase
of defendant's farm.  On November 25, 1914, after
prior verbal negotiations, plaintiff had a land con-
tract drawn and signed by himself, and took the same
to Mr. Batzer's residence.  Batzer had received $100
on the purchase price prior to this date.  Mr. Batzer
was not at home, and in his absence Mr. Robinson
paid $200 to Mr. Batzer's daughter, who signed Mr.
Batzer's name to the same.  Mr. Batzer never saw
the land contract until he returned home, and had
never authorized his daughter to sign the same.  Mr.
Batzer went to see Mr. Robinson on the 26th (the
next day), and not finding him at home, left word
with Mrs. Robinson that he would not stand by the
contract.  Mr. Robinson admitted that upon arriving
home he was so advised by his family and that Batzer
claimed the contract void.  Mr. Batzer met Mr. Rob-
inson the next day (November 27th) on the street
and said to him:  'The contract is not guilty, I don't
stand by that contract at all.'  Robinson afterwards
moved in in Mr. Batzer's absence, and they shared
the house together for a few days.  Mr. Batzer then
moved to town.  Mr. Robinson lived on the farm until
about the 10th of March.  On February 12th, he was
sent a written notice from Mr. Batzer's attorneys,
repudiating the claimed contract and demanding pos-
session.  Mr. Batzer subsequently commenced sum-
mary proceedings and secured judgment for restitu-
tion.

"This suit was brought for the recovery of the $300
received by Mr. Batzer and for plowing done on the
farm by plaintiff, material and labor in repairing
barn, cleaning out and deepening well on farm, put-
ting up and storing ice, and for manure left on farm.
Defendant filed a claim in setoff for rent of premises
and farm products used by plaintiff.  The jury re-
turned a verdict for $399.66.  On motion for new trial,
the trial court granted a new trial unless plaintiff re-
mitted enough from the judgment to bring it down
to $375, and this plaintiff did."

Plaintiff, in his brief, supplements the foregoing statement by the following:

"That defendant suggested shortly before the contract was drawn that it was a good time to draw the contract, and produced the abstract, from which the description of the land was taken. That the matter of drawing the contract was talked over by both parties with Mr. Bittner, who drew the contract, and that plaintiff told what to put in the contract, before the defendant. That, when the defendant told the plaintiff that the contract was no good, he said it wasn't good because there was not enough money paid. That the plaintiff then said, 'I told you at the time that you could get no more money until they paid me more, and when I did I would straighten it all up,' and that the defendant then said, 'That will be all right then.' That $90 of the first $100 paid on the purchase price was left by plaintiff at the defendant's house, and that afterward the defendant said it was all right, it would make a secure bargain. That defendant at all times retained the $300 of the purchase price paid, even after the starting of the summary proceedings. That all improvements were made by plaintiff before defendant gave notice of a repudiation of the contract and upon the understanding that he was to buy the land from defendant for $7,300, $300 of which he had already paid. That plaintiff bought the farm under good intentions, and that he moved onto defendant's land while defendant was there. That defendant gave plaintiff a barn to use before that, and gave plaintiff the use of defendant's cook stove. That prior to this plaintiff had moved grain into the barn of defendant in defendant's presence and with his consen . That plaintiff plowed a part of the land during the fall, and that defendant told him where to plow.

"Defendant's bill of particulars of setoff contained item of 15 tons of straw used by plaintiff, at $3 per ton, and left by defendant on the farm when possession was given to plaintiff, which defendant testified was fed by plaintiff to his stock, when in possession of defendant's farm, and went to make up manure, which remained upon the land of defendant at the time plaintiff gave up possession. Defendant would not sell straw from his place. Almost the entire value

of straw used for bedding is the value of the manure it will make, and straw used by plaintiff was used for bedding."

Plaintiff's declaration contains the common counts in assumpsit, and he furnished a bill of particulars as follows:

| | |
|---|---:|
| To money paid to defendant by plaintiff during October, November, and December, 1914 | $300.00 |
| To plowing done on defendant's land | 40.00 |
| To furnishing material and labor in repairing barn on defendant's premises | 20.00 |
| To cleaning out and deepening well on defendant's premises | 50.00 |
| To putting up and storing ice on defendant's premises | 20.00 |
| To manure left on defendant's farm | 25.00 |
| Total | $455.00 |

The plea is the general issue, with notice of set-off, the particular items of which are specified. The assignments of error are 14 in number, and are grouped and discussed under the heads:

"(a) Errors in the admission of Exhibits D and E, raised by assignments 2 and 3.

"(b) Errors in the admission of evidence and in refusing to withdraw items of ice and manure from the consideration of the jury, and in the charge of the court, raised by assignments 4, 7, 8, 9, 10, 13, and 14.

"(c) Error in the admission of the land contract in evidence, raised by assignment 6.

"(d) Error in the reception of Mr. Robinson's testimony as to what he had been advised by an attorney, raised by assignment 5.

"(e) Error in the admission of evidence and the charge of the court as to the repairs to the barn and well and to plowing, raised by assignments, 1, 7, 11, and 12."

The Exhibits D and E, above referred to, are statements of account rendered to plaintiff by dealers, itemizing and pricing various articles bought by plaintiff

and claimed by him to have been used in repairing the premises. The nature of other exceptions relied upon will appear from the facts stated above and the testimony to be hereinafter referred to.

There was testimony tending to prove that, although the defendant disapproved the form of the land contract, the understanding was mutual that plaintiff would purchase and defendant would sell and convey the farm, and that plaintiff took possession of the land and made certain repairs upon the premises, used some of the straw for his stock, and generally acted as an owner would act with his own. The reason for not concluding the sale is not made clear. The court advised the jury that plaintiff was entitled to recover the sum he had paid as part of the purchase price, which was $300. As to the other items for which a recovery was sought, the jury was advised that the tests to apply in allowing or disallowing them were:

*First.* Whether work was done and money expended, as claimed by the plaintiff.

*Second.* Whether at the time plaintiff believed and had the right to believe that he was rightfully in possession and that a sale would be consummated.

*Third.* Whether or not the labor and money expended by plaintiff was reasonable and proper and defendant had the benefit of it.

"If it was reasonable and proper, in view of all of the circumstances, for the defendant to make these improvements, then he is justified in making the improvements; but before the defendant can be chargeable therewith it must appear that these improvements were reasonable and necessary and that they conferred a benefit upon the defendant."

Particularly, the jury was told that plaintiff could not recover for the ice unless it was appropriated by defendant, and that as to the manure left on the farm by plaintiff, it must appear that it was left in such shape that it was actually an improvement to the farm and defendant had the benefit of it.

As to defendant's alleged set-off for straw, ensilage, and rent, the jury was instructed:

"The defendant has offered proof of those items, and that proof has gone in without objection, and the testimony has been taken on both sides, and for that reason I submit these items to you.

"Now in proving these items the burden of proof is upon the defendant as to those items to prove by the greater weight of testimony the amount and value, and I will speak of this somewhat in detail.

"As to the straw, you are authorized to allow the defendant as against the plaintiff the reasonable value of the straw at the time and place it was used, and of that amount and portion of the straw which was used by the defendant for bedding his horses or used in feeding the plaintiff's cattle; the reasonable value of the amount used by plaintiff either in the way of bedding or feeding, the reasonable amount and reasonable value of that, if any, may be allowed. The same principle applies to the ensilage.

"There was there a silo containing a certain amount of ensilage worth a certain amount at that time and place, and it is the contention of the defendant that the plaintiff used a certain quantity of that silo, and it is the contention of the defendant that he used much less than the amount claimed by the plaintiff. You are authorized to allow to defendant against the plaintiff the value as shown by the testimony, the reasonable value as shown by the testimony of the amount of ensilage actually used by the plaintiff.

"It is a fact, that, for a certain period of time the plaintiff was in the occupancy of the buildings and farm of the defendant, he was in occupancy, going into its occupancy under the circumstances that you have described, and the testimony shows how long he stayed there; and I instruct you upon that point that you may allow the defendant as against the plaintiff the reasonable value of the use of that place, reasonable rent for the use of that place during the time it was used by the plaintiff, and in fixing this value you will consider all of the testimony there is upon the subject, and consider the time of the year, and the nature of the use of it, and the price paid, so far

as any testimony has been given on that subject, for similar property under similar circumstances."

There is no way of knowing what the jury allowed or disallowed of these respective claims, except that it is presumed they allowed plaintiff $300 for purchase money paid. Nor can we tell what influenced the court in concluding that $24.66 of the verdict returned ought to be remitted.

OSTRANDER, J. (*after stating the facts*). It was defendant's position in the trial court, indicated by a motion to withdraw items of plaintiff's demand from consideration by the jury, that plaintiff performed labor upon the farm and expended money in that connection at his peril; that as to the items for ice and manure left at the farm there was no testimony tending to prove that they were ever appropriated by defendant; that as to the purchase money paid by plaintiff he could not be heard to deny the validity of the land contract, and, if not void "as against him," the money was not recoverable under the count for money had and received. His position is not different in this court, except that it is not contended that plaintiff may not recover the purchase money he had paid defendant; nor is any fault found with the charge of the court submitting to the jury certain items of the claimed set-off.

It has been held (*Davis* v. *Strobridge*, 44 Mich. 157 [6 N. W. 205]), that an oral contract for the sale of land may be made valid by part performance, and that, when one who has contracted orally to sell land rescinds the contract and ousts the vendee in possession, the latter may acquiesce and recover money paid on the contract, and, if the contract is rescinded without his fault, the land has been cleared, and the benefit of the work is appropriated by the vendor, he is liable to pay for it.

195 Mich.—16.

The terms of the writing to which the daughter of defendant signed his name, and which he at once repudiated, do not appear. The terms of the oral agreement, if a complete agreement was made, are left uncertain by the testimony. Who was responsible for not carrying out whatever oral understanding there was does not appear. Plaintiff has not gone far enough in his proofs to permit the application here of the rule of *Davis* v. *Strobridge;* to show that there was a complete and certain parol contract, that in reliance upon it he took possession of the land, that the contract was without his fault rescinded, that he acquiesced in the rescission. The inferences to be drawn from the testimony are that there was not a complete parol agreement; that the understanding, in a general way, was that defendant would sell his farm for $7,-300 and plaintiff would, some time, pay that sum; that plaintiff found some fault with the defendant's title, and, being in possession, was later on evicted in summary proceedings.

At the common law there was no recovery allowed for betterments as against the title holder. Our statutes permit such a recovery only in cases of ejectment when the owner brings the suit, and not as a personal judgment, but as a condition to the obtaining a writ of possession. In any event, a claim for betterments is founded upon equitable grounds, and the character of the improvement must be such as to make the land more valuable in the future for the ordinary purposes for which such property is owned and used. Plaintiff was neither a tenant, nor, so far as appears, was he holding under a contract to purchase, and so defendant was not a landlord nor a vendor in a contract to sell; though it cannot be said that in entering upon the land plaintiff entered in bad faith. As I think the facts negative the right of defendant to maintain an action against the plaintiff for use and occupation,

at least before notice to quit was given, so I think they negative the right of plaintiff to recover for betterments. As to the ice and manure, there is no evidence that defendant appropriated either. There is, however, no apparent reason for refusing plaintiff a recovery for the $300 he paid to defendant. The last of this sum was paid November 25, 1914, and from that time interest at 5 per cent. per annum should be paid.

The judgment is reversed in part, and the court below advised to enter judgment for plaintiff as indicated, with costs. In this court no costs will be awarded to either party. Act No. 314, Pub. Acts 1915, chap. 47, § 20 (3 Comp. Laws 1915, § 13701).

KUHN, C. J., and STONE, BIRD, MOORE, STEERE, BROOKE, and FELLOWS, JJ., concurred.