*R. L. Maynard,* contra.

---

## 2990.  BUCK et al. v. DUVALL.

1. Upon the execution and delivery of bond for title to land, the equitable title charged with the payment of the purchase-money passes to the vendee, and the vendor holds the legal title only as security for the unpaid residue of the purchase-money.

2. As to making the payments stipulated for in the sale of land where bond for title is given, time is usually not of the essence of the contract.

3. If the vendee under a bond for title defaults in his payments, the vendor has the right to rescind upon giving the vendee notice that he will insist upon prompt payment and upon returning to him the amount of the purchase-money which he has paid, plus the value of any permanent improvements which he may have placed upon the land, less the damages which have been occasioned to the vendor by the vendee's failure to perform the contract.

4. If, without having completed the rescission by restoring the status, the vendor in the bond for title resells the property to a third person, who takes without notice of the vendee's equitable title, the vendee may treat the resale either as a rescission of the sale or as a breach of the bond. If he elects to treat it as a rescission, he may recover from the vendor the amount of purchase-money he has paid, and the value of the permanent improvements he has placed upon the land, less the damages which have been occasioned by reason of his (the vendee's) failure to perform the contract. If he treats it as a breach of the bond, the measure of damages is the value of the premises at the time of the resale, less the amount due on the unpaid purchase-money.

5. Where a vendor in a bond for title breaches his bond by a resale of the property, the statute of limitations does not begin to run until the time of the resale.

DECIDED SEPTEMBER 11, 1911.

Complaint; from city court of Tifton—Judge R. Eve.    October 3, 1910.

*L. P. Skeen*, for plaintiffs in error.

*R. D. Smith, Fulwood & Murray*, contra.

RUSSELL, J.    Duvall sued Buck and Downing for breach of the covenant contained in a bond for title. His petition shows, that on June 25, 1903, he purchased from Buck and Downing certain real estate, for which he agreed to pay them $705 on terms of $5 cash, $175 on July 12, $175 on August 12, and $350 on December 12 thereafter, Buck and Downing executing to him their bond for title, conditioned to make him title upon payment to them of the full purchase price; that he paid to them the $5 and the two notes for $175 each, making a total payment of $355, but failed to pay the note for $350 due on December 12, 1903; that on July 1, 1908, Buck and Downing resold the land to other persons, for $1,250; and that Buck and Downing have never rescinded by paying back any of the $355 paid them, or by returning or offering to return the unpaid note. He alleges that Buck and Downing are liable to him in the sum of $1,026, this amount being the difference between the price at which they resold the property in 1908 and the balance which he failed to pay them, with interest. Buck and Downing demurred to this petition on several grounds, and the case is before this court on exception to the overruling of the demurrer.

"The execution and delivery of the bond for title creates a special form of trust estate. The equitable title, charged with the payment of the purchase-money, passes to the vendee, and the vendor holds the legal title charged with the use that, while it may be

42

asserted to secure the payment of the purchase-money in full, nevertheless, as soon as the purchase-money is paid, it (the legal title) is to pass to the vendee, his heirs or assigns." Powell, Actions for Land, § 374, and cases there cited. Time is not usually of the essence of the contract, and, therefore, except in certain rare cases where time is of the essence of the contract, a default of the vendee in his payment does not cause him to lose his interest in the land. However, the failure of the vendee to pay according to the terms of his contract authorizes the vendor to rescind. Rescission involves the restoration of the original status so far as it is practicable; and if the vendee has paid a portion of the purchase-price, it is the duty of the vendor to pay him his money back after deducting an amount sufficient to cover the loss occurring to him by reason of the vendee's failure to perform his contract. In case of rescission the vendor stands bound to account to the vendee for the amount of the purchase-money which the vendee has paid, together with the value of such permanent improvements as have been made by the vendee, less the damages which have been occasioned by the vendee's failure to perform his contract. As to all these general propositions, see Powell, Actions for Land, §§ 378, 379, where there is a full discussion of the subject. If the petition in the present case showed a case of rescission, the measure of damages would be, not the value of the premises at the time of the resale by the vendor (subject to deduction on account of the unpaid note due by the plaintiff to the defendant), but the amount that the plaintiff had paid to the defendants, less any damages that have been occasioned to the defendants by reason of the plaintiff's having failed to perform his contract. However, the petition does not allege a rescission of the sale, but alleges a breach of the contract evidenced by the bond for title; and in such a case the provisions of the Civil Code (1910), § 4401, are applicable, as follows: "Upon breach of a bond for title to land, the value of the premises at the time of the breach, with interest thereon, should be the measure of damages." The defendants have not rescinded, for they have retained not only the money that was paid them, but also the note given them by the plaintiff. Of course, the plaintiff could have considered the resale of the property as a rescission of the contract, and could have proceeded to recover back the money equitably due him in accordance with the principle

announced in the case of *McDaniel* v. *Gray,* 69 *Ga.* 433, 435. On
the other hand, it was his option to treat it as a breach of
the contract and to sue for the higher measure of damages. The
petition is silent as to whether the plaintiff was in possession of
the land at the time the resale was made. If he was, the second
vendee would have taken with notice of his rights, and the sale
would not necessarily have operated as a breach of the bond. A
demurrer to the petition on the ground that it was not alleged
whether the plaintiff was or was not in possession of the land
might have been well taken, but no such point was made, either
in this court or in the lower court. From the way in which the
case was argued, it is evident that the plaintiff was not in posses-
sion of the property at the time of the resale, and that the second
vendee was a purchaser without notice; so that the plaintiff can not,
by paying to him the remaining $350 with interest, get title
to the land. The plaintiff not being in possession of the land, and
time not being of the essence of the contract, in the bond for title or
otherwise, it was incumbent on the defendants, before reselling,
to effect a rescission, and even then it would seem that notwith-
standing the delay which had occurred, they should have given the
plaintiff notice that they were going to insist upon prompt per-
formance before making a rescission. *Ellis* v. *Bryant,* 120 *Ga.* 890,
894 (48 S. E. 354). Under the facts alleged, we think that the
petition set out a cause of action and that the court did not err in
overruling the demurrer.

The point is made that the action was barred · by the statute
of limitations. We think that the plaintiff's cause of action arose
on the day of the resale; and as the statutory period, counting
from that time, had not expired, this point is not well taken.

*Judgment affirmed.*