## A05A1235. CROWELL v. WILLIAMS.
(615 SE2d 797)

BLACKBURN, Presiding Judge.

Following a bench trial, plaintiff Joseph Crowell appeals a defense judgment that denied his claim to recover the money he, as buyer, paid to the seller as partial payment in an unperformed real estate transaction in which the seller was to hold the property title until all money was paid. We agree with the trial court's characterization of this transaction as similar to an "installment sale" or "bond for title" arrangement; however, we disagree with the holding that a purchaser is not entitled to recover monies paid under such a contract where the seller in effect rescinds the transaction due to the purchaser's default. Accordingly, we reverse.

1. "The court is the trier of fact in a bench trial, and its findings will be upheld on appeal if there is any evidence to support them. The plain legal error standard of review applies where the appellate court determines that the issue was of law, not fact." (Punctuation omitted.) *Simmons v. Bd. of Tax Assessors of Effingham County*.[1] As the issues in this appeal are the construction of a contract and the remedies for rescission, which are questions of law, we review the issues de novo and apply the plain legal error standard of review. See *Deep Six, Inc. v. Abernathy*.[2]

The material evidence is undisputed. Crowell approached Larry Williams in December 1999 to purchase a vacant lot on a lake, giving Williams $1,000 to hold the property. In May 2000, the parties executed a contract prepared by Crowell, in which Crowell agreed to purchase (and Williams agreed to sell) the property for a purchase price of "$45,000.00 to be paid as follows: $16,000 down payment with the balance of $29,000 to be paid by August 15, 2000." Williams agreed to furnish good and marketable title to the property.

At the bench trial, the parties jointly stipulated that even though the written contract price was $45,000, the price was in fact $55,000. They further stipulated that Crowell in fact paid Williams $26,000 when the contract was executed, $10,000 of which was in cash. The parties also stipulated that Williams had marketable legal title to the

[1] *Simmons v. Bd. of Tax Assessors of Effingham County*, 268 Ga. App. 411 (1) (602 SE2d 213) (2004).

[2] *Deep Six, Inc. v. Abernathy*, 246 Ga. App. 71, 73 (2) (538 SE2d 886) (2000).

property at the time he signed the contract, and that Williams did nothing to prevent the closing; rather, Crowell simply was unable to pay the $29,000 remaining due under the contract.

The undisputed evidence further showed that, prior to executing the contract, the parties did not discuss what would happen to the $26,000 in the event of default. Williams retained the $26,000 down payment and placed the property on the market again, this time at a much higher price. Crowell sought to recover the $26,000 down payment.

Comparing this contract to a "bond for title" or "installment sale contract," the trial court concluded that the $26,000 down payment was paid as part of the purchase price and that upon payment of the balance of the purchase price, Williams was to convey by warranty deed the real property to Crowell. The court held that Williams was not obligated to repay any money to Crowell and accordingly entered judgment in favor of Williams.

2. It is clear that, as stated in the plain language of the contract, the money paid with the execution of the contract ($26,000 as stipulated by the parties) was a down payment,[3] with the remaining $29,000 to be paid by August 15. See *Deep Six, Inc.*, supra at 73 (2) (construction of a contract is based on the intent of the parties as set forth in the contract). Williams was to convey legal title to Crowell upon his payment of the remaining $29,000.

The contract was legally similar to a bond for title or an installment sale contract. A bond for title refers in real estate to "[t]he seller's retention of legal title until the buyer pays the purchase price." Black's Law Dictionary, p. 175 (7th ed. 1999). Similarly, an installment sale refers to "[a] conditional sale in which the buyer makes a down payment followed by . . . payments and the seller retains title . . . until all payments have been received." Id. at 800. These definitions describe the contractual arrangement here. See *Chilivis v. Tumlin Woods Realty Assoc.*[4]

3. Here the parties stipulated that Crowell was unable to perform his obligation of paying the additional $29,000. Williams retained possession of the vacant lot and was attempting to resell it to another purchaser, which action rescinded the contract. Thus, the contract, which made no other provision for this situation, was at an end. Unless otherwise provided by the contract, the seller is required to return any purchase monies paid where the transaction is in effect canceled or rescinded by the buyer's default in failing to pay the entire

---

[3] Black's Law Dictionary defines "down payment" as "[t]he portion of a purchase price paid in cash (or its equivalent) at the time the sale agreement is executed." Black's Law Dictionary, p. 1150 (7th ed. 1999).

[4] *Chilivis v. Tumlin Woods Realty Assoc.*, 250 Ga. 179, 181-183 (2) (297 SE2d 4) (1982).

purchase price and the seller reasserts possession. See OCGA § 13-4-62 ("[a] party may rescind a contract without the consent of the opposite party on the ground of nonperformance by that party but only when both parties can be restored to the condition in which they were before the contract was made").

Such a requirement was set forth as early as 1882 by the Supreme Court of Georgia in *McDaniel v. Gray & Co.*,[5] in which the purchaser under a bond for title failed to pay the balance of the purchase price for some vacant land and sought a return of his initial payment after the sellers retook possession of the land and sold it to another. The court held that

> upon the failure of the purchaser to pay, the vendors had the right to reduce the [debt] to judgment, file a deed and sell the land; or, they could bring ejectment; or, if the land was still vacant, they could re-enter and take possession of it. . . . *But when they pursued the last named course, they thereby elected to rescind the trade, and an implied obligation on their part arose to restore to the purchaser the amount of purchase money paid by him,* less such an amount as would prevent actual loss to them by reason of his non-performance of the contract; and he could bring his action therefor.

(Emphasis supplied.) Id. at 434.

The underlying premise of this doctrine is that the partial payment of the purchase price gives the buyer an equitable interest in the land to the extent of his investment. *Horner v. Savannah Valley Enterprises.*[6] See *Chilivis*, supra at 182 (2) (equitable estate arises in favor of buyer). " 'This interest is property. He can not be deprived of such property except by virtue of some valid contract. It can not be done by way of penalty or forfeiture.' *Lytle v. Scottish American Mortgage Co.*"[7] *Braddy v. Boynton.*[8] Inasmuch as Georgia law abhors forfeitures, *DeLamar v. Fidelity Loan &c. Co.*,[9] the absence of a written contractual provision specifying a forfeiture in the event of nonpayment requires a court to rule that the partial payment be returned to the buyer. *Kite v. Vickery;*[10] *Goss v. Finger.*[11] See generally

---

[5] *McDaniel v. Gray & Co.*, 69 Ga. 433 (1882).
[6] *Horner v. Savannah Valley Enterprises*, 234 Ga. 371, 374-375 (216 SE2d 113) (1975).
[7] *Lytle v. Scottish American Mtg. Co.*, 122 Ga. 458, 467 (8)-(11) (50 SE 402) (1905).
[8] *Braddy v. Boynton*, 271 Ga. 55, 56 (518 SE2d 411) (1999).
[9] *DeLamar v. Fidelity Loan &c. Co.*, 158 Ga. 361, 365 (2) (123 SE 116) (1924).
[10] *Kite v. Vickery*, 153 Ga. 301, 304-305 (111 SE 904) (1922).
[11] *Goss v. Finger*, 28 Ga. App. 410-411 (111 SE 212) (1922).

*Hopkins v. Garner &c. Co.*[12] (forfeiture provision must be in writing). Even if a contractual provision existed here that specified forfeiture, such would constitute a liquidated damages provision, which would not be enforced unless certain requirements (no evidence of which is present here) were met. See *Capricorn Systems v. Pednekar.*[13]

Rescission, therefore, was the remedy available when Williams desired to retain the land and to sell it to another. *Watkins v. Maddox Med. Assoc.*[14] See *Lytle,* supra at 465 (2). Here, Williams continued to hold possession and title to the land and in fact again offered it for sale to another, thus showing he had elected to rescind the contract with Crowell. See *Dukes v. Baugh*[15] (reasserting possession of property indicates rescission); *McDaniel,* supra at 435 (reentering vacant land and reselling it showed rescission); *Smith v. Wolf*[16] (retaking possession of land shows rescission).

"Having elected to do this, [Williams was] in possession of both land and money; not by any legal process, nor by contract, but by [his] individual act." *McDaniel,* supra at 436. But "he can not rightfully retain both land and purchase-money," especially since he suffered no loss by the aborted transaction. *Couch v. Crane.*[17] "When a contract is rescinded, the parties are not to be left where the rescission finds them. The original status must be restored, or an equivalent therefor must be provided in the contract or furnished by the law." *Lytle,* supra at 466 (3). See OCGA § 13-4-62. Accordingly, Williams "should restore to the purchaser the amount of the purchase-money paid." *Kite,* supra at 304-305. See *Parks v. Columbia Loan Co.*[18] (buyer entitled to purchase money paid by him); *Smith,* supra at 20 (buyer "entitled to recover his partial payments"). See generally 2 Hinkel, Pindar's Ga. Real Estate Law & Procedure, § 18-18, p. 210 (6th ed. 2004) (upon default by buyer, court "will refund the purchase money if the purchaser no longer wants the property"). Failure by the trial court to award such money to the buyer is grounds for reversal. *McDaniel,* supra at 437; *Goss,* supra at 412; *Haygood v. Kennedy.*[19]

Accordingly, we reverse the judgment of the trial court and remand the case for judgment to be entered in favor of Crowell in the amount of $26,000.

---

[12] *Hopkins v. Garner &c. Co.,* 233 Ga. App. 264, 270 (3) (504 SE2d 78) (1998).

[13] *Capricorn Systems v. Pednekar,* 248 Ga. App. 424, 427 (2) (c) (546 SE2d 554) (2001).

[14] *Watkins v. Maddox Med. Assoc.,* 270 Ga. 404, 406 (2) (509 SE2d 614) (1998).

[15] *Dukes v. Baugh,* 91 Ga. 33 (1) (16 SE 219) (1892).

[16] *Smith v. Wolf,* 50 Ga. App. 19-20 (176 SE 889) (1934).

[17] *Couch v. Crane,* 142 Ga. 22, 27 (6) (82 SE 459) (1914).

[18] *Parks v. Columbia Loan Co.,* 98 Ga. App. 713, 714 (106 SE2d 442) (1958).

[19] *Haygood v. Kennedy,* 27 Ga. App. 689 (109 SE 522) (1921).

*Judgment reversed and case remanded with direction. Miller and Bernes, JJ., concur.*

DECIDED JUNE 15, 2005 —

*Sean A. Black*, for appellant.
*Sanders & Smith, Janney E. Sanders*, for appellee.